UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KERRY LOY and FRANK BLUMEYER, JR., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:19-CV-00184 JAR |
| | ) |
| BMW OF NORTH AMERICA, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant BMW of North America, LLC's Motion to Dismiss, or in the Alternative, Motion to Sever. (Doc. No. 15.) The motion is fully briefed and ready for disposition.[1] BMW has requested oral argument. Finding that the issues have been extensively briefed and that oral argument would not assist the Court, the request is denied.

**I. Background**

This action arises out of complications involving BMW of North America, LLC ("BMW") and Bavarian Motor Work's N63 engine and its excessive consumption of oil. (Complaint, Doc. No. 1 at ¶ 1.) On June 27, 2013, Plaintiff Kerry Loy ("Loy") "purchased a certified pre-owned 2011 BMW 550i … from Jackie Cooper Imports, an authorized dealer of the Defendants." (*Id.* at ¶ 11.) Loy paid a total of $38,590.00 for the 2011 BMW 550i. (*Id.* at ¶ 12.) Similarly, on October 9, 2012, Plaintiff Frank Blumeyer, Jr. ("Blumeyer") "purchased a new 2013 BMW 750li … from

---

[1] On July 24, 2019, BMW filed a sur-reply with leave of court (Doc. No. 24) to address Plaintiffs' supplemental authority filed on May 10, 2019 (Doc. No. 21). On November 18, 2019, BMW filed another sur-reply with leave of court (Doc. No. 29) to address Plaintiffs' supplemental authority filed on October 4, 2019 (Doc. No. 25) and November 8, 2019 (Doc. No. 26).

1

Plaza BMW, an authorized dealer of the Defendants." (*Id.* at ¶ 19.) Blumeyer paid a total of $94,965.00 for his 2013 BMW 750li. (*Id.* at ¶ 20.) "At the time Plaintiffs purchased the subject vehicles, Defendants made representations as to the subject vehicles' performance and quality and assured the Plaintiffs that the subject vehicles were free from defects of workmanship." (*Id.* at ¶ 26.) Both vehicles sported BMW's "new V8, twin-turbocharged engine, which BMW and enthusiasts refer to as the 'N63.'" (*Id.* at ¶ 29.) Additionally, BMW recommended for both vehicles that the oil change interval should occur at "the earlier of 15,000 miles or two years." (*Id.* at ¶ 49.)

Relatively soon after their respective purchases, both Loy and Blumeyer noticed that their vehicles consumed, and therefore needed, more engine oil: Loy added "two quarts of oil every 1,500 to 2,000 miles" (*id.* at ¶ 14), and Blumeyer added "one quart of oil every 1,000 miles" (*id.* at ¶ 21), both "throughout the warranty period and well before the Defendants' recommended oil change intervals" (*id.* at ¶¶ 14, 21). The excessive rate of oil consumption exhibited by both vehicles led the Plaintiffs to bring this issue to the attention of an authorized dealer during their appropriate warranty periods. (*Id.* at ¶¶ 15, 22.) The dealer from which Loy sought help informed him that this type of oil "consumption was normal because of the engine," and accordingly did not offer to repair the defect causing excessive engine oil consumption at that time. (*Id.* at ¶ 16.) In Blumeyer's case, the dealer offered no remedy for the issue. (*Id.* at ¶ 23.) Thereafter, both Loy and Blumeyer continued to add engine oil to their vehicles in between the recommended oil change intervals. (*Id.* at ¶¶ 17, 24.)

Since its introduction in 2008, BMW's N63 engine has gained a reputation—one widespread in the automotive industry and in the "BMW-enthusiast community"—for excessively consuming oil and needing "frequent engine repairs." (*Id.* at ¶ 32.) BMW has yet to provide a reason for the N63 engine's excessive oil consumption, but the BMW-enthusiast community

speculates that the engine contains either a manufacturing or design defect. (*Id.* at ¶ 33.) Despite no direct statements from BMW about the N63's excessive oil consumption (*id.* at ¶¶ 38, 42), BMW has partially responded to the issue through BMW-issued technical service bulletins (*id.* at ¶¶ 43-48) as well as through implementation of the "N63 Customer Care Package" and customer offer programs (*id.* at ¶¶ 52, 55-56).

Some BMW-issued technical service bulletins acknowledged that N63 engines may experience engine complications or defects that cause excessive oil consumption. (*Id.* at ¶ 44.) A BMW-issued technical service bulletin from June 2013 introduced a new oil consumption standard for N63 engines:

> Engines equipped with a turbocharger(s) will consume more engine oil than normally aspirated engines (non-turbocharged). The additional oil that is consumed in a turbocharged engine is mainly due to the turbocharger lubrication requirements…
>
> …The additional engine oil consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal and not a defect…
>
> …All BMW engines (excluding Motorsport) can consume up to 1 quart of engine oil per 750 miles at any time.

(*Id.* at ¶ 47.) Plaintiffs aptly point out that this oil change interval rate established in BMW's June 2013 technical service bulletin would require owners to add one quart of oil to the N63 engine twenty times before reaching the original recommended interval of 15,000 miles. (*Id.* at ¶ 49.)

As for the "N63 Customer Care Package," BMW rolled out this package in December 2014 (*id.* at ¶ 52) to "instruct[] service representatives to check each covered vehicle's timing chain, fuel injectors, mass air flow sensors, crankcase vent lines, battery, engine vacuum pump, and low pressure fuel sensor, and [to] replace if necessary" (*id.* at ¶ 53). The "N63 Customer Care Package" even "instructed its service representatives to check and to replace these components for free, even if no longer covered by the manufacturer's standard four-year/50,000 mile warranty." (*Id.* at ¶ 53.)

Notably, the "N63 Customer Care Package" also changed the oil change intervals from "the earlier of 15,000 [miles or] two years to the earlier of 10,000 miles or one year." (*Id.* at ¶ 54.) BMW also rolled out the "N63 Customer Loyalty Offer" and the "N63 Customer Appreciation Program" to appease frustrations of customers. (*Id.* at ¶¶ 55, 56.) The "N63 Customer Loyalty Offer" extended owners of vehicles equipped with the N63 engine an opportunity to replace their N63 vehicles. (*Id.* at ¶ 55.) In a similar spirit, the "N63 Customer Appreciation Program" "authorized dealerships to provide purchasers with up to $50 of BMW merchandise or accessories." (*Id.* at ¶ 56.)

Since BMW's introduction of the N63 engine in 2008, BMW has known about the new engine's excessive oil consumption defect. (*Id.* at ¶ 60.) BMW obtained this knowledge through "pre-release testing data, durability testing, early consumer complaints..., testing conducted in response to those complaints, aggregated data from BMW dealers, including dealer repair orders and high warranty reimbursement rates, as well as, from other internal sources." (*Id.*) Loy and Blumeyer could not have known about the oil consumption defect at the time they purchased their vehicles in 2012 and 2013 because they did not have access to BMW's information and research, nor could Plaintiffs have discovered the excessive oil consumption without actually purchasing the vehicle and driving it off the lot. (*Id.* at ¶¶ 60, 61, 65.) BMW failed to disclose the engine defect, which put the Plaintiffs' safety in danger. (*Id.* at ¶ 61.) Additionally, Plaintiffs have incurred costs from upkeep with and from repairs to the engine caused by the excessive oil consumption; unnecessary costs but for the engine defect. (*Id.* at ¶ 62.)

On February 6, 2019, Plaintiffs filed their complaint against BMW. Plaintiffs allege that BMW (1) breached written and implied warranties pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310, et seq. (*id.* at ¶¶ 83-89) when BMW "failed to remedy the subject vehicles' oil consumption defect within a reasonable time, and/or a reasonable number of

attempts" (*id.* at ¶ 88); (2) breached the Implied Warranty of Merchantability pursuant to the Magnuson-Moss Act and Mo. Rev. Stat. § 400.2-314 (2019) (*id.* at ¶¶ 90-96) when BMW sold vehicles not in a merchantable condition to Plaintiffs (*id.* at ¶ 94); (3) breached express warranties under Mo. Rev. Stat. § 400.2-313 (2019) (*id.* at ¶¶ 97-105) when BMW "failed to comply with the terms of the express written warranty provided to each Plaintiff, by failing and/or refusing to repair the oil consumption defect under the vehicles' warranty" (*id.* at ¶ 100); and (4) violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 400.010, et seq. (2019) (*id.* at ¶¶ 106-114) when BMW "misrepresented that the subject vehicles had characteristics, uses and/or benefits that they do not have" and "failed to disclose information concerning the subject vehicles that was known at the time of their sale" (*id.* at ¶ 109). Plaintiffs seek revocation of acceptance of the subject vehicles and money damages in the form of a refund of the full contract prices and all payments made on the subject contracts. In the event they are not entitled to revocation, Plaintiffs seek replacement of the subject vehicles with new vehicles or repair of the defective vehicles with an extension of the express and implied warranties and service contracts applicable to the subject vehicles. Plaintiffs seek incidental and consequential damages; punitive damages in the amount of $250,000; and reasonable attorney's fees.

**II.     Arguments of the parties**

BMW moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively to sever pursuant to Federal Rule of Civil Procedure 21. In support of its motion, BMW argues the Court lacks subject matter jurisdiction because Plaintiffs cannot meet the $50,000 amount in controversy requirement under the MMWA. BMW relies on *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406 (7th Cir. 2004), and *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956-57 (7th Cir. 1998), wherein the Seventh Circuit employed the following formula

5

for determining the amount in controversy under the Act: "the price of a replacement vehicle, minus both the present value of the allegedly defective car and the value that the plaintiff received from the use of the allegedly defective car." *See id*. Alternatively, BMW argues that Plaintiffs' "claims should be severed and then dismissed for lack of jurisdiction" because Plaintiffs' claims arise out of different transactions and have dissimilar facts.

Plaintiffs respond that BMW has not shown to a legal certainty that their claim is for less than $50,000. They urge the Court to depart from the *Gardynski-Leschuck* formula, citing *Miller v. Nissan N. Am., Inc.*, No. 4:18CV00340RLW, 2018 WL 4211370, at *3 (E.D. Mo. Sept. 4, 2018), where the court accepted the amount in controversy as the purchase price of the car. Plaintiffs also contend that "punitive damages [] are recoverable in a breach of warranty action under Missouri law and should be included in the amount in controversy under the [MMWA]." In further response, Plaintiffs contend the Court has diversity jurisdiction over their claims because "there exists complete diversity in citizenship of parties and the statutorily required $75,000.00 jurisdictional minimum . . . is satisfied."[2]

With regard to BMW's motion to sever, Plaintiffs assert they are properly joined because they jointly seek relief arising out of the same series of transactions or occurrences. Both Plaintiffs bought from an authorized BMW dealer a vehicle containing a N63 engine that excessively consumes oil, obtained "substantively identical" warranties from BMW, and received no offers to

---

[2] Plaintiffs did not specifically plead diversity jurisdiction in their original complaint, but maintain that they have distinctly and affirmatively pled citizenship of the parties and amount in controversy. (Compl. at ¶¶ 7, 8, 10, 12, 18, 20). Diversity jurisdiction requires the parties be "*citizens* of different States." 28 U.S.C. § 1332(a)(1) (emphasis added). Here, the complaint states Plaintiffs' residency, but not their citizenship. Thus, the pleadings are inadequate to establish diversity. See Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987). However, as discussed *infra*, the Court has determined it has jurisdiction pursuant to the MMWA. Accordingly, it need not address the issue of diversity jurisdiction.

remedy the engine defect. Plaintiffs again cite to *Miller*, 2018 WL 4211370, at *3, where the court declined to sever two plaintiffs who experienced the same defect and the same breach of warranty.

In reply, BMW argues that punitive damages cannot factor into the amount in controversy because they are not available under Missouri law for a breach of warranty action. BMW also argues that the $50,000 amount in controversy is not met because Plaintiffs' "best case scenario damages" under the *Schimmer/Gardynski-Leschuck* formula is $39,330 – the vehicles' ultimate values. BMW labels *Miller* as "inapposite" because it is an "outlier" in the District.

As for its motion to sever, BMW further elaborates on the differences between the facts and claims brought by both Plaintiffs. In particular, BMW points to facts such as Plaintiffs purchasing the vehicles in different years, different models, different dealers, new versus certified pre-owned vehicles, and different warranties made to Plaintiffs based on the vehicle they each purchased. BMW maintains that should the Court sever the claims, both Plaintiffs would still fail to meet the $50,000 jurisdictional amount.

The Court will address the motion to sever first.

### III. Motion to sever

Pursuant to Federal Rule of Civil Procedure 20(a), plaintiffs may join in one action if their right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences; and … any question of law or fact common to all plaintiffs will arise in the action." Additionally, Rule 20(b) "vests in the district court the discretion to order separate trials or make such other orders as will prevent delay or prejudice." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974). The purpose of permissive joinder of parties is "to promote trial convenience and expedite the final determination of disputes." *Id.* (citing 7 C. Wright, Federal Practice and Procedure § 1652 at 265 (1972)).

In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, courts generally apply a case by case approach. *Miller v. Nissan N. Am., Inc.*, No. 4:18CV00340RLW, 2018 WL 4211370, at *2 (E.D. Mo. Sept. 4, 2018) (quoting *Mosley*, 497 F.2d at 1333). "[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* (citing 7 C. Wright, Federal Practice and Procedure § 1653 at 270 (1972)). "Absolute identity of all events is unnecessary" in order for reasonably related claims to be tried in a single proceeding. *Id.*

Here, Loy and Blumeyer seek relief arising out of the same transactions or occurrences, namely, BMW's use of defective N63 engine components and refusal or failure to repair the same in violation of its warranty. Both Plaintiffs have the same N63 engine in their respective cars and both experienced excessive engine oil consumption as a result of that defective engine. Both had written warranties covering the engine which were substantively identical. In each case, BMW's authorized dealers told Plaintiffs the excessive engine oil consumption did not warrant any repairs and failed to repair the vehicles. Thus, Plaintiffs meet the first requisite for joinder under Rule 20(a).

Likewise, Plaintiffs' claims share common questions of law and fact. These include whether defects in the same N63 engines result in excessive oil consumption; whether and when BMW became aware of the defect in the N63 engines; what BMW instructed its dealerships regarding how to address complaints of oil consumption; and whether, as Plaintiffs allege, BMW deliberately concealed the defect from Plaintiffs. Under these facts, joinder is proper. *See, e.g., Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 251 (2d Cir. 1986); *Mosley*, 497 F.2d at 1334; *Bryant, et al v. BMW of North America, LLC*, No. 2:19-cv-00050-PP (E.D. Wis. Oct. 3,

2019); *Schneider v. BMW of N. Am., LLC*, No. 18-CV-12239-IT, 2019 WL 4771567, at *5 (D. Mass. Sept. 27, 2019); *Miller*, 2018 WL 4211370, at *3; *El Fakih v. Nissan N. Am., Inc.*, No. 18-CV-60638, 2018 WL 4193675, at *5 (S.D. Fla. July 26, 2018).

Because the Court finds Plaintiffs have properly joined their claims for purposes of Rule 20(a), the next issue – raised in BMW's motion to dismiss – is whether Plaintiffs meet the amount in controversy requirement for the MMWA.

## IV.   Motion to dismiss

"In ruling on a motion to dismiss, the Court 'must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party.'" *Miller*, 2018 WL 4211370, at *2 (quoting *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010)). "Generally, a complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (quoting *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007) (alteration in original) (quoting *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994)). "The legal certainty standard is met where the legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (alteration in original) (quotations and citations omitted).

The MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damage and other legal and equitable relief." 15 U.S.C. § 2310(d)(1); *Mishra v. Coleman Motors, LLC*, No. 4:16CV01553 PLC, 2017 WL 994868, at *2 (E.D. Mo. Mar. 15, 2017); *Baker v. Auto Stop, Inc.*, No. 4:12-CV-

9

00244, 2012 WL 3762047, at *1 (E.D. Mo. Aug. 29, 2012). The MMWA provides for federal jurisdiction of certain claims, but only if the plaintiff meets the jurisdictional amount of $50,000 "(exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § § 2310(d)(1)(B), 2310(d)(3)(B).[3]

"Although the Eighth Circuit has not discussed how to determine the amount in controversy under the Act, other circuit courts, including the Third, Sixth, and Seventh, and district courts in the Eastern and Western Districts of Missouri, have determined that the formula for calculating damages under the Act is: the price of a replacement vehicle, minus both the present value of the allegedly defective vehicle and the value that the plaintiff received from the use of the allegedly defective vehicle." *Curry v. Pleasurecraft Marine Engine Co.*, 950 F. Supp. 2d 1057, 1059–60 (W.D. Mo. 2013) (citing *Golden v. Gorno Bros., Inc.,* 410 F.3d 879, 885 (6th Cir. 2005); *Schimmer*, 384 F.3d at 406; *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004); *Baker*, 2012 WL 3762047, at *1; *Dembski v. American Honda Motor Co., Inc.*, No. 06–6060–CV–SJ–REL, 2006 WL 2331178, at *3 (W.D. Mo. Aug. 10, 2006)); *see also Mishra*, 2017 WL 994868, at *3; *Stephens*, 2011 WL 890686, at *6. As noted above, Plaintiffs rely on *Miller*, where the court accepted the amount in controversy as the purchase price of the car. The Court does not find *Miller* determinative given the weight of authority from this District and the fact that *Miller* did not address the *Gardynski-Leschuck* formula.

Under the *Gardynski-Leschuck* formula, the Court starts with the original purchase price of the vehicles - $38,359 for Loy and $94,965 for Blumeyer. The original purchase price represents

---

[3] The statutory reference to "all claims" does not, however, allow consideration of the amount of damages requested for any non-MMWA claim to satisfy the jurisdictional amount required for an MMWA claim. *Mishra*, 2017 WL 994868, at *2 (citations omitted). Additionally, claims for attorneys' fees are excluded from the amount-in-controversy calculation. *Id*. at *3; *Stephens v. Arctic Cat Inc.*, No. 4:09CV02131 AGF, 2011 WL 890686, at *5 (E.D. Mo. Mar. 14, 2011).

10

the price of a replacement vehicle. *See Schimmer*, 384 F.3d at 406. From this number, the Court deducts the present value of the vehicle and then further reduces that number by the value that Plaintiffs obtained from their vehicles. In support of a present value figure, BMW relies on Kelley Blue Book. According to Kelley Blue Book, depending on the condition of the car, i.e., Excellent, Very Good, Good and Fair, the current price of a 2011 BMW 550i (like Loy's vehicle) with typical mileage is between $8,230 and $13,687, and the current price of a 2013 BMW 750Li (like Blumeyer's vehicle) with typical mileage is between $18,112 and $25,643. BMW has determined present value based on vehicles in "Excellent" condition - $13,687 for Loy and $25,643 for Blumeyer. BMW then arrives at the value Plaintiffs received from their use of their vehicles over a five-to-six-year period by subtracting each vehicle's current "Excellent" Kelley Blue Book value from the original purchase price. Thus, according to BMW, the value Loy received from the use of his vehicle is $24,672, which corresponds to the overall depreciation in the vehicle's value as determined by subtracting its present value of $13,687 from the original purchase price of $38,359. Likewise, the value that Blumeyer received from the use of his vehicle is $69,322, which corresponds to the vehicle's depreciation as determined by subtracting its present value of $25,643 from the original purchase price $94,965. Therefore, BMW argues, Plaintiffs cannot recover any damages, because the purchase price of the cars, minus present value and depreciation, equals $0.

The Court takes issue with BMW's calculations. First, BMW disregards any diminished value resulting from the alleged oil consumption defect. A similar issue was raised in *Schultz v. General R.V. Center,* 512 F.3d 754 (6th Cir. 2008). There, defendants offered the National Automobile Dealers Association ("NADA") value of the motor home at issue in an attempt to demonstrate that the plaintiff vehicle owners could not meet the $50,000 jurisdictional amount under the MMWA. The Sixth Circuit rejected this evidence, noting that the NADA value assumed

11

the subject vehicle was in good condition and failed to consider that "[t]o the extent the vehicle was plagued by defects, the present value would decrease and the difference between the purchase price and the present value would only increase, resulting in a greater amount in controversy." *Id.* at 758.

Second, as noted by the court in *Carroll v. BMW of North America, LLC*, No. 1:19-cv-00224-JMS-TAB, 2019 WL 2059619, at *5 (S.D. Ind. May 9, 2019), "*Schimmer* says nothing at all about how to evaluate the value a buyer receives from owning a car. To the contrary, the Seventh Circuit specifically stated that it would have 'no way of knowing what this figure might be.' " *Carroll* rejected BMW's attempts to take the *Schimmer* "analysis a step further by coming up with its own way to evaluate the value that Mr. Carroll received from driving the Vehicle," and found "the formula in *Schimmer* does not provide grounds for dismissal because it does not allow the Court to conclude to a legal certainty that the claims at issue in this case fall below the $50,000 jurisdictional amount set forth in the [MMWA]." *Id*.

Furthermore, because Plaintiffs' claims are properly joined, Plaintiffs may aggregate their damages to meet the MMWA's $50,000 jurisdictional threshold. *See Abraham*, 795 F.2d at 242-43 ("individual claims may be aggregated toward satisfaction of the $50,000 requirement if the claims satisfy the requirements for joinder under Rule 20. 15 U.S.C. § 2310(d)(3)(B)."); *Schroeder v. Barth, Inc.*, 969 F.2d 421, 422 (7th Cir. 1992) (federal court has MMWA jurisdiction if the amount in controversy aggregates $50,000); *Saval v. BL Ltd.*, 710 F.2d 1027, 1030 (4th Cir. 1983)).

Lastly, Plaintiffs have alleged $250,000 in punitive damages. Although the basis for Plaintiffs' punitive damages claim is unclear, the Court can consider a request for punitive damages under the MMWA in the calculation of the jurisdictional amount for that claim if an award of punitive damages is permitted under state law for a related claim. *Mishra*, 2017 WL

994868, at *3 (citing *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984)); *Miller*, 2018 WL 4211370, at *3 n.3; *Baker v. Auto Stop, Inc.*, No. 4:12cv00244 CEJ, 2012 WL 3762047, at *2 (Mo. ED. Aug. 29, 2012).

"Under Missouri law, a plaintiff may recover punitive damages for breach of a warranty contract if the defendant's conduct 'amounts to an independent, willful tort and there are proper allegations of malice, wantonness, or oppression …' " *Baker,* 2012 WL 3762047, at *1 (quoting *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 903 (Mo. 1990)); *see also Chariton Vet Supply, Inc. v. Moberly Motor Co.*, No. 2:08CV47MLM, 2009 WL 1011500, at *4-5 (E.D. Mo. Apr. 15, 2009). Here, the complaint alleges that BMW acted intentionally and willfully and with disregard for Plaintiffs' safety – conduct for which punitive damages may be awarded under Missouri law. For example, Plaintiffs allege that BMW knew about the oil consumption defect in the N63 engine, yet chose not to fix it or warn consumers about the safety hazard it posed, and instead covered up the issue by releasing new oil consumption standards. (Compl. at ¶¶ 16, 23, 38-40, 43-46, 48-49, 60-61, 71). Plaintiffs incorporate these allegations into each count of their complaint. Therefore, the Court will consider punitive damages in determining whether the $50,000 amount in controversy requirement has been satisfied. *Baker,* 2012 WL 3762047, at *2.

## V. Conclusion

For these reasons, the Court cannot conclude to a legal certainty that Plaintiffs' claims fall below the $50,000 jurisdictional amount under the MMWA. The Court therefore concludes that the complaint sets forth causes of action that could plausibly reach the $50,000 threshold. As such, BMW's motion to dismiss is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant BMW's Motion to Dismiss Plaintiffs' Complaint, or in the Alternative, Sever [15] is **DENIED**.

This matter will be set for a Rule 16 Conference by separate order.

Dated this 22nd day of November, 2019.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**